UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
EVANSVILLE DIVISION

| | |
|---|---|
| VICTORIA A., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 3:19-cv-00216-RLY-MPB |
| ) | |
| ANDREW M. SAUL Commissioner of the Social ) | |
| Security Administration, ) | |
| ) | |
| Defendant. ) | |

**REPORT AND RECOMMENDATION ON
APPROPRIATE DISPOSITION OF THE ACTION**

This matter was referred to the Magistrate Judge under 28 U.S.C. § 636(b)(1)(B) and Fed. R. Civ. P. 72(b) for a Report and Recommendation as to its appropriate disposition. (Docket No. 18). Plaintiff Victoria A.[1] seeks judicial review of the Social Security Administration's final decision deeming her ineligible for Disability Insurance Benefits (DIB). The matter is fully briefed. (Docket No. 13, Docket No. 17, Docket No. 19). It is recommended that the District Judge **REMAND** the decision of the Deputy Commissioner of the Social Security Administration finding that Plaintiff Victoria A. is not disabled, pursuant to sentence four of 42 U.S.C. § 405(g) for further consideration, consistent with this opinion.

---

[1] To protect the privacy interests of claimants for Social Security benefits, consistent with the recommendation of the Court Administration and the Case Management Committee of the Administrative Office of the United States Courts, the Southern District of Indiana has opted to use only the first name and last initial of non-governmental parties in its Social Security judicial review opinions.

## Introduction

Plaintiff, Victoria A., protectively filed her applications for Title II in July 7, 2016, for disability insurance benefits, alleging disability beginning April 2, 2016. (Docket No. 7-5 at ECF p. 4).

Her claim was denied initially and upon reconsideration. (Docket No. 7-4 at ECF p. 6; Docket No. 7-4 at ECF p. 16). Administrative Law Judge (ALJ) Michael S. Worrall held a hearing on June 13, 2018, at which Victoria A., represented by counsel, and a vocational expert (VE) James Bordari, appeared and testified. (Docket No. 7-2 at ECF pp. 43–68). On November 5, 2018, the ALJ issued an unfavorable decision. (Docket No. 7-2 at ECF pp. 16–30). The Appeals Council denied review on August 26, 2019. (Docket No. 7-2 at ECF pp. 2–4). On October 18, 2019, Victoria A. timely filed this civil action, asking the Court pursuant to 42 U.S.C. § 405(g) to review the final decision of the Deputy Commissioner denying her benefits. (Docket No. 1).

## Standard for Proving Disability

To prove disability, a claimant must show she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death, or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). Plaintiff is disabled if her impairments are of such severity that she is not able to perform the work she previously engaged in and, if based on her age, education, and work experience, she cannot engage in any other kind of substantial gainful work that exists in significant numbers in the national economy. 42 U.S.C. § 1382c(a)(3)(B). The Social Security Administration (SSA) has implemented these statutory

standards by, in part, prescribing a five-step sequential evaluation process for determining disability. 20 C.F.R. § 404.1520.

Step one asks if the claimant is currently engaged in substantial gainful activity; if she is, then she is not disabled. Step two asks whether the claimant's impairments, singly or in combination, are severe. If they are not, then she is not disabled. A severe impairment is one that "significantly limits [a claimant's] physical or mental ability to do basic work activities." 20 C.F.R. § 404.1520(c). The third step is an analysis of whether the claimant's impairments, either singly or in combination, meet or medically equal the criteria of any of the conditions in the Listing of Impairments, 20 C.F.R. Part 404, Subpart P, Appendix 1 (the Listings). The Listing of Impairments includes medical conditions defined by criteria that the SSA has pre-determined are disabling, so that if a claimant meets all of the criteria for a listed impairment or presents medical findings equal in severity to the criteria for the most similar listed impairment, then the claimant is presumptively disabled and qualifies for benefits. *Sims v. Barnhart,* 309 F.3d 424, 428 (7th Cir. 2002).

If the claimant's impairments do not satisfy a listing, then her residual functional capacity (RFC) is determined for purposes of steps four and five. RFC is a claimant's ability to do work on a regular and continuing basis despite her impairment-related physical and mental limitations. 20 C.F.R. § 404.1545. At the fourth step, if the claimant has the RFC to perform her past relevant work, then she is not disabled. The fifth step asks whether there is work in the relevant economy that the claimant can perform, based on his vocational profile (age, work experience, and education) and her RFC. If so, then she is not disabled.

The individual claiming disability bears the burden of proof at steps one through four. *Bowen v. Yuckert,* 482 U.S. 137, 146 n.5 (1987). If the claimant meets that burden, then the

Commissioner has the burden at step five to show that work exists in significant numbers in the national economy that the claimant can perform, given her age, education, work experience, and functional capacity. 20 C.F.R. § 404.1560(c)(2); *Young v. Barnhart,* 362 F.3d 995, 1000 (7th Cir. 2004).

## Standard for Review of the ALJ's Decision

Judicial review of the Commissioner's (or ALJ's) factual findings is deferential. This court must affirm the ALJ's decision unless it lacks the support of substantial evidence or rests upon a legal error. *See, e.g.*, *Nelms v. Astrue*, 553 F.3d 1093, 1097 (7th Cir. 2009); 42 U.S.C. § 405(g). Substantial evidence means evidence that a reasonable person would accept as adequate to support a conclusion. *Dixon v. Massanari,* 270 F.3d 1171, 1176 (7th Cir. 2001). The ALJ—not the court—holds discretion to weigh evidence, resolve material conflicts, make independent factual findings, and decide questions of credibility. *Richardson v. Perales*, 402 U.S. 389, 399-400 (1971). Accordingly, the court may not re-evaluate facts, reweigh evidence, or substitute its judgment for the ALJ's. *See Butera v. Apfel*, 173 F.3d 1049, 1055 (7th Cir. 1999).

The ALJ is required to articulate a minimal, but legitimate, justification for his decision to accept or reject specific evidence of a disability. *Scheck v. Barnhart,* 357 F.3d 697, 700 (7th Cir. 2004). The ALJ need not address every piece of evidence in his decision, but he cannot ignore a line of evidence that undermines the conclusions he made. The ALJ must trace the path of his reasoning and connect the evidence to his findings and conclusions. *Arnett v. Astrue,* 676 F.3d 586, 592 (7th Cir. 2012); *Clifford v. Apfel,* 227 F.3d 863, 872 (7th Cir. 2000).

**Analysis**

I. **The ALJ's Sequential Findings**

The ALJ followed the five-step sequential evaluation set forth by the SSA in 20 C.F.R. § 404.1520(a) and ultimately concluded that Plaintiff was not disabled. (Docket No. 7-2 at ECF p. 30). The ALJ found that Plaintiff met the insured status requirement through June 30, 2019.[2] (*Id.* at ECF p. 18). At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity.[3] (*Id.*) At step two, the ALJ found that she had the following severe impairments: "osteoporosis, chronic kidney disease, diabetes mellitus, and seizure disorder." (*Id.*). At step three, the ALJ found that she did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments. (*Id.* at ECF p. 21). The ALJ specifically considered Listings 1.02, 1.04, 6.05, and 11.02. (Docket No. 7-2 at ECF p. 21). After step three, but before step four, the ALJ concluded:

> The claimant has the residual functional capacity to perform a range of light work (20 CFR 404.1567(b)). She can lift and carry 20 pounds occasionally and 10 pounds frequently. She can sit, stand, or walk about 6 hours each in an 8-hour workday, with normal breaks. She can push and pull what she can lift and carry. The claimant can occasionally climb ramps, stairs, ladders, ropes, or scaffolds. She can frequently balance, stoop, kneel, crouch, or crawl.

(*Id.* at ECF p. 21–22).

---

[2] A claimant must have disability insured status when they become disabled; Plaintiff must prove the onset of disability on or before the date she last met the insured status requirements (the date last insured or "DLI") to be eligible for benefits. *See* 20 C.F.R. § 404.131.
[3] Substantial gainful activity is defined as work activity that is both substantial (i.e., involves significant physical or mental activities) and gainful (i.e., work that is usually done for pay or profit, whether or not a profit is realized). 20 C.F.R. § 404.1572(a).

At step four, the ALJ concluded that Plaintiff was able to perform her past relevant work as a Mortgage Loan Processor. (*Id.* at ECF p. 29). Thus, the ALJ concluded that Plaintiff was not disabled and did not proceed to the step five analysis. (*Id.* at ECF p. 30).

II. **Review of Plaintiff's Assertions of Error**

   A. **Step Two Consideration of Major Depressive Disorder/General Anxiety Disorder, Migraine Headaches, Arthritis, and Combination of Conditions**

Plaintiff argues that the ALJ's step two analysis is critically flawed because the ALJ erred in (1) rejecting Plaintiff's major depressive disorder and general anxiety disorder, (2) rejecting Plaintiff's migraines, (3) rejecting Plaintiff's arthritis, and (4) failing to properly address the combination of Plaintiff's conditions when assessing severity. The Commissioner counters that the ALJ considered these impairments, but reasonably concluded that they were not severe because they would not significantly limit Plaintiff's ability to perform basic work activities. Moreover, the Commissioner argues that there was no error given the ALJ proceeded through the remaining steps and step two is only a threshold consideration.

The ALJ is required to determine at step two of the sequential analysis whether the claimant in fact has an impairment or combination of impairments that is "severe." 20 C.F.R. § 404.1520(a)(4)(ii). The burden is on the claimant to prove that the impairment is severe. *Zurawski v. Halter*, 245 F.3d 881, 885-86 (7th Cir. 2001). A severe impairment is an impairment or combination of impairments that "significantly limits [one's] physical or mental ability to do basic work activities." 20 C.F.R. § 404.1520(c). As long as the ALJ determines that the claimant has one severe impairment, the ALJ will proceed to the remaining steps of the evaluation process. 20 C.F.R. § 404.1523; *see also Golembiewski v. Barnhart*, 322 F.3d 912, 918 (7th Cir. 2003) ("Having found that one or more of [appellant's] impairments was 'severe,' the ALJ needed to consider the aggregate effect of the entire constellation of ailments—including those

6

impairments that in isolation are not severe."). Thus, the step two determination of severity is "merely a threshold requirement." *Hickman v. Apfel*, 187 F.3d 683, 688 (7th Cir. 1999).

### 1. *Major Depressive Disorder and General Anxiety Disorder*

In assessing Plaintiff's mental impairments, the ALJ acknowledged her medically determinable impairments of major depressive disorder and generalized anxiety disorder. (Docket No. 7-2 at ECF pp. 19–20). The ALJ considered both singly and in combination. (*Id.*). The ALJ also considered the four broad areas of mental functioning, and based on the evidence, concluded that Plaintiff had no limitation in understanding, remembering or applying information; interacting with others; and adapting or managing oneself; and only mild limitation in concentration, persistence, or pace. (*Id.* at ECF p. 20). For each domain, the ALJ cited evidence supporting his conclusion. Moreover, the ALJ also relied on the opinions of the state agency psychologists who opined that Plaintiff's mental impairments were non-severe. (*Id.* at ECF p. 21, citing Docket No. 7-3 at ECF pp. 6, 18–19).

There was substantial evidence to support the ALJ's conclusion. While additional records were submitted after the state agency physicians' opinions in August and December 2016, including Dr. Bhatia's treatment records and continued medication management,[4] an ALJ is not required to update a claimant's medical record every time he or she receives additional treatment, otherwise "a case might never end." *Keys v. Berryhill*, No. 16-1745, 2017 WL 548989, at *3 (7th Cir. Feb. 9, 2017). Plaintiff has not demonstrated how these new records would impact the state

---

[4] Plaintiff also references the new records demonstrate a suicide attempt. (Docket No. 13 at ECF p. 28). Plaintiff makes no citation to the record for this claim and while the court has no duty to search the record, the court did not find evidence of a suicide attempt in the record. In fact, in August 2016, Plaintiff denied feeling suicidal in an examination with Dr. Umali. (Docket No. 7-8 at ECF p. 47).

7

agency physicians' opinions or the conclusions the ALJ drew at step two regarding Plaintiff's major depressive disorder and generalized anxiety disorder. *See id.*

Plaintiff also takes issue that her long-standing history of depression and anxiety required a severe finding at step two. In support, Plaintiff notes Dr. Tuley's numerous diagnoses for anxiety and depression and her related medication; Dr. Umali's finding that Plaintiff's examination, "indicate[s] a history of significant mental health problems, which negatively impact her daily life" (Docket No. 7-8 at ECF pp. 49–50), and Dr. Newkirk's depression diagnosis (Docket No. 7-8 at ECF p. 52). But, a diagnosis, alone, does not establish functional limitations. *Richards v. Berryhill*, 743 F. App'x 26, 30 (7th Cir. 2018). And the ALJ accounted for these records in his RFC discussion. For instance, the ALJ noted that Dr. Tuley routinely indicated during 2015 and 2016 that Plaintiff's depression was under good control with medication. (Docket No. 7-2 at ECF p. 23). The ALJ specifically cited Dr. Tuley's March 4, 2016, examination where Plaintiff noted that she had been under a lot of stress and would like to start on medication, whereby Dr. Tuley adjusted her medication regimen. (*Id.* at ECF p. 24). The ALJ further noted both Dr. Bhatia and Dr. Newkirk's examinations. (*Id.* at ECF pp. 25–26).

The ALJ's handling of Plaintiff's depression and anxiety is distinguishable from *O'Connor-Spinner v. Colvin*, 832 F.3d 690 (7th Cir. 2016). There, a treating physician diagnosed Plaintiff with "major depression, recurrent severe," yet the ALJ agreed with the state agency psychologists that the impairment was non-severe. And in accepting these non-examining opinion the ALJ "minimized the import of a decade of records . . . [that] document treatment for, and recurrent symptoms of, [Plaintiff's] major depressive disorder," instead relying on Plaintiff's "latest visit . . . when she had reported improvement." *Id.* at 696. The Seventh Circuit indicated the ALJ's decision was replete with examples of cherry-picking evidence and ultimately did not

8

consider *any* effects which the disorder may have had to Plaintiff's RFC. *Id.* at 698. But, unlike *O-Connor-Spinner*, here the Commissioner argues that this step two finding, if erroneous, was harmless because the ALJ's decision, as discussed above, continued to consider the aggregate effect of her depression in the subsequent steps. 20 C.F.R. § 404.1523, *see also Golembiewski v. Barnhart*, 322 F.3d 912, 918 (7th Cir. 2003) ("having found that one or more of [Plaintiff's] impairments was 'severe,' the ALJ needed to consider the *aggregate* effect of the entire constellation of ailments—including those impairments that in isolation are not severe.").

Finally, the ALJ did not err in considering daily activities as those activities were evidence related to the four broad functional areas and the ALJ did not equate those daily activities with her ability to work full-time. To assess Plaintiff's ability to adapt or manage herself, the ALJ reasonably considered her ability to do laundry, go out alone, drive when needed, shop, and manage most aspects of her finances. (Docket No. 7-2 at ECF p. 20). And the ALJ did not err in correctly noting that Plaintiff did not receive *psychiatric consultation* or *mental health counseling therapy* for her mental health impairments, while also correctly summarizing the medical care regarding her mental health from her primary care providers. The ALJ did not say Plaintiff *must* have mental health treatment from a psychiatrist in order to have a severe mental impairment.

    2. *Migraine Headaches*

The ALJ found Plaintiff's migraine headaches were non-severe at step two. (Docket No. 7-2 at ECF p. 19). He further tracked Plaintiff's reports that a "Dr. Warren" treated her for migraine headaches, but explained that "there was no objective evidence supporting this treatment or findings." (*Id.*). Plaintiff argues the ALJ failed to properly consider her migraines because (1) it is legal error to find that they are non-severe because the record lacks objective

9

evidence and (2) because the record extensively demonstrates the existence and the severity of her migraine headaches. (Docket No. 13).

The undersigned agrees with the Commissioner, that the ALJ explained he did not rely, generally, on the "lack of objective evidence" showing migraines, but instead referred to the "lack of objective evidence" to mean the lack of medical records that Plaintiff actually treated with Dr. Warren for migraines. *Compare* (Docket No. 7-2 at ECF p. 19 ("The claimant reported she had established with Dr. Warren to treat her migraine headaches; however, there was no objective evidence supporting this treatment or findings.")) *with* (*Id.* at ECF p. 26 ("[T]here were no records from Dr. Warren presented before or during the hearing, and the claimant's representative was not able to remotely access medical records. No records were produced afterward.")).

But, the undersigned agrees that the ALJ fails to acknowledge evidence of migraine headaches. Plaintiff had received a diagnosis of migraine headaches (Docket No. 7-8 at ECF p. 81; Docket No. 7-9 at ECF p. 39) and had been prescribed medication specifically for it. (Docket No. 7-6 at ECF p. 80). Further, Plaintiff reports having headaches three to four times a week that include constant throbbing, and sensitivity to light and noise. (Docket No. 7-6 at ECF p. 35). The ALJ did not confront this evidence in coming to his conclusion that migraine headaches were non-severe and even though a diagnosis alone does not require a severity finding, the undersigned does find that the ALJ erred by not confronting this evidence at step two or later incorporating it into his RFC discussion. Moreover, the Commissioner's reliance on Dr. Newkirk and the state agency doctors omitting migraines as a diagnosis or a severe impairment is unpersuasive considering the ALJ did not rely on the same in his decision.

*v. Chenery*, 318 U.S. 80, 93–94 (1943) (holding that review is strictly limited to the reasons articulated by the ALJ in the written decision). Remand is required on this issue.

   3. *Arthritis*

The ALJ noted that Plaintiff was diagnosed with osteoarthritis of the knee, but determined that Plaintiff's arthritis would only minimally limit her ability to perform basic work activities based on it "not [being] supported with objective evidence." (Docket No. 7-2 at ECF p. 19). Plaintiff argues that the ALJ failed to properly consider her arthritis because (1) again her statements about intensity, persistence, and limiting effects of her symptoms cannot be disregarded solely because medical evidence did not substantiate the degree of the impairment and (2) the record documents the existence and severity of her arthritis.

While a closer call than the migraine headaches, the ALJ does appear to overlook evidence that contradicts his finding that "[t]here is no objective medical evidence that the claimant's arthritis more than minimally limits the claimant's ability to perform basic work activities." (Docket No. 7-2 at ECF p. 19). The ALJ recognized a diagnosis of osteoarthritis of the knee, but indicated that "examining physicians repeatedly noted that the claimant had no anatomical deformity, grossly abnormal stiffness, limited range of motion, or ineffective ambulation." (*Id.*). Plaintiff takes issue with that because she was found to have tenderness in her left knee during numerous exams. (Docket No. 13 at ECF p. 34) (citing medical records). The issue with this complaint is the ALJ did address the majority of these cited records in his RFC discussion. (Docket No. 7-2 at ECF pp. 22–29). However, he did not align this seemingly contradictory evidence with his step two finding. And moreover, there is conflicting evidence that the ALJ did not address, including Plaintiff's complaint that she almost falls at times (Docket No. 7-8 at ECF p. 51) and past evidence of falls (Docket No. 7-8 at ECF pp. 31–44; Docket No.

11

7-13 at ECF p. 41). Further, Dr. Umali reported Plaintiff's gait as "odd" and "stiff." (Docket No. 7-8 at ECF p. 47).

The Commissioner responds that Plaintiff attempts to cherry-pick the record and cite several instances where she complained of knee pain or walked with a "stiff" gait are insufficient to disturb the ALJ's determination. This argument is unpersuasive because, as discussed, the ALJ did overlook at least some evidence that contradicts his conclusion. And given remand is already required, this evidence should be considered on remand.

   4. *Combination of Impairments*

Plaintiff argues that the ALJ erred at step two in failing to consider the combination of Plaintiff's impairments. Step two is the foundation of the ALJ's Decision. It is the first inquiry an ALJ makes of a claimant's conditions. 20 C.F.R. § 404.1520. If the evidence is not properly analyzed at step two, it can infect the remainder of the decision. *O'Connor-Spinner v. Colvin*, 832 F.3d 690, 698 (7th Cir. 2016) (erroneously eliminating depression at step two resulted in a flawed ultimate decision). In this case, while the ALJ concluded that Plaintiff suffered from severe impairments, Plaintiff contends that the ALJ failed to consider the severity of other medically determinable impairments that affect Plaintiff's functioning.

The ALJ concluded that Plaintiff's depression and anxiety, migraines, and arthritis were non-severe impairments and, thus, Plaintiff contends that they ALJ did not consider these impairments as they relate to her other conditions. The regulations specifically note that concurrent impairments or the combined effect of impairments must also be considered. 20 C.F.R. § 404.1523(b) ("If you have two or more concurrent impairments which, when considered in combination, are severe, we must also determine whether the combined effect of your impairments [is severe]."); 20 C.F.R. § 404.1523(c) ("In determining whether your physical or

mental impairment or impairments are of a sufficient medical severity that such impairment or impairments could be the basis of eligibility under the law, we will consider the combined effect of all your impairments without regard to any such impairment, if considered separately, would be of sufficient severity.").

The ALJ failed to consider what effect these impairments might have on Plaintiff's other conditions. The ALJ failed to consider how Plaintiff's depression and anxiety, migraines, and arthritis may be severe if considered with her other severe impairments, including: osteoporosis, chronic kidney disease, diabetes mellitus, and seizure disorder. This is critical given the evidence showing that Plaintiff's treatment for one impairment has an effect on another impairment. (e.g., NSAIDs for migraines affect her kidneys). (Docket No. 7-13 at ECF pp. 3–6). Notably, the Commissioner does not respond to this argument at all. Remand is required. While step two errors can be harmless, here there is evidence that the ALJ did not appropriately consider migraine headaches, arthritis, and the combination of impairments at subsequent steps. *See Jones v. Berryhill*, No. 5:17-cv-00091-D, 2018 WL 774035, at *4 (E.D.N.C. Jan. 24, 2018) ("[A]ny error at step two in failing to properly consider whether an impairment is severe may be harmless where the ALJ considers that impairment in subsequent steps."). Here, remand is required.

### B. Additional Development

Having found remand supported by the issues discussed above, the court declines to fully address Plaintiff's remaining assignments of error. However, in the interest of providing guidance, the undersigned notes additional areas of development.

*1. Step Three*

Plaintiff asserts a scattershot of errors at step three, including: (1) the errors identified at step two that bled into step three, (2) that the ALJ failed to properly consider medical

13

equivalence and failed to provide particularized reasons why specific listing requirements were not met, and (3) that the ALJ particularly failed in his analysis of Listing 6.05, particularly by failing to request the opinion of a medical expert on the issue of medical equivalence.

To meet an impairment identified in the listings, a plaintiff must establish, with objective medical evidence, the precise criteria specified in the listing. *See* 20 C.F.R. § 404.1525; *Sullivan v. Zebley*, 493 U.S. 521, 530–31 (1990). In the alternative, a claimant can establish "medical equivalence" in the absence of one or more of the findings if she has other findings related to the impairment or has a combination of impairments that "are at least of equal medical significance." *See* 20 C.F.R. § 404.1526(a)-(b). In considering whether a claimant's condition meets or equals a listed impairment, an ALJ must discuss the listing by name and offer more than a perfunctory analysis of the listing. *See Brindisi ex rel. Brindisi v. Barnhart*, 315 F.3d 783, 786 (7th Cir. 2003). For example, in *Minnick v. Colvin*, 775 F.3d 929, 935–36 (7th Cir. 2015), the Seventh Circuit found the ALJ's perfunctory analysis to warrant remand when it was coupled with significant evidence of record that arguably supported the listing. *See Kastner v. Astrue*, 697 F.3d 642, 647–48 (7th Cir. 2012) (remanding where the ALJ's cursory listing analysis failed to articulate a rationale for denying benefits when the record supported finding in the claimant's favor). To demonstrate that an ALJ's listing conclusion was not supported by substantial evidence, the claimant must identify evidence of record that was misstated or ignored which met or equaled the criteria. *See, e.g., Sims v. Barnhart*, 309 F.3d 424, 429–30 (7th Cir. 2002).

Here, the ALJ did name the Listing's he considered and provided some analysis. It is a close call as to whether his analysis would be considered "perfunctory." On remand, the ALJ should ensure that his listing explanation is not a mere conclusion that the impairment did not meet or equal the listing because the record did not demonstrate the listed requirements. The ALJ

must do more than list the requirements without explanation as to how specific requirements were lacking and without explanation to any of the record evidence. Moreover, it is unclear from the record whether some of Plaintiff's medical records relevant to the 6.05 analysis were analyzed by the state-agency physicians on reconsideration. For example, Plaintiff's laboratory testing from September 7, 2016 showed an eGFR of 20.[5] (Docket No. 7-8 at ECF pp. 65–67). This is after the records received for the initial state agency physician's review. (Docket No. 7-3 at ECF p. 4) (showing latest medical evidenced received in August 2016). Plaintiff treated with Dr. Tuley for her kidney-related issues. The reconsideration review requested updated records from Dr. Tuley on November 17, 2016 (Docket No. 7-3 at ECF p. 16), but there is no indication it was received. The ALJ should review this issue and determine whether an updated medical opinion in necessary.

2. *RFC Analysis*

Plaintiff also takes a kitchen-sink approach in arguing a variety of errors in the ALJ's RFC analysis. The court has previously addressed some of these arguments, including whether the ALJ's treatment of her records related to her depression and her anxiety as well as whether it may be necessary to obtain updated medical opinions. Plaintiff also argues that the ALJ erred in assigning no weight to the treating source opinions of Dr. Bhatia and in the ALJ's credibility assessment of Plaintiff.

The law is clear that although an ALJ should consider the regulatory factors outlined in 20 C.F.R. § 404.1527(c), he need not explicitly discuss each one in his decision so long as he

---

[5] Listing 6.05 requires an eGFR of 20 or less on at least two occasions at least 90 days apart during a consecutive 12-month period, and diagnosis of one of the following: (1) renal osteodystrophy, (2) peripheral neuropathy, (3) fluid overload syndrome, or (4) anorexia. 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 6.05.

otherwise articulates why the opinion is inconsistent with the record. *See Schreiber v. Colvin*, 519 F. App'x 951, 959 (7th Cir. 2013). These factors include: (1) the examining relationship; (2) the treatment relationship, including the (i) length of the treatment relationship and frequency of examination, and (ii) nature and extent of the treatment relationship; (3) supportability; (4) consistency; (5) specialization; and (6) any other relevant factors. *See* 20 C.F.R. § 404.1527(c)(1)–(6). The ALJ gave Dr. Bhatia's opinion no weight, in part, because his opinions "[are] not well supported by clinical and diagnostic findings and it [are] inconsistent with other evidence in the record." (Docket No. 7-2 at ECF p. 27). On remand, the ALJ should consider the clinical and diagnostic findings that he gave more weight to and that are consistent with Dr. Bhatia's opinion. For instance, the ALJ indicated that Dr. Sands's opinion was more consistent with the overall record, but Dr. Sands found consistencies, even noting multiple frequent postural limitations, including balancing, with Dr. Bhatia's opinions. (Docket No. 7-3 at ECF p. 9).

Plaintiff makes a plethora of arguments that the ALJ's credibility argument was patently wrong. For the most part, these arguments merely cite general legal principles without citation to the ALJ's decision or the record. The court notes there is a distinction between equating Plaintiff's daily activities with the ability to work full-time, which is improper, and noting that a Plaintiff's daily activities suggest that she can do more than she alleged, which is proper. *See Burmester v. Berryhill*, 920 F.3d 507, 510 (7th Cir. 2019). Further, while a Plaintiff's statements may be less credible if the level or frequency of treatment is inconsistent with the level of complaints, SSR 96-7p requires that an ALJ "must not draw any inferences about any individual's symptoms and their functional effects from a failure to seek or pursue regular medical treatment without first considering any explanations that the individual may provide." Plaintiff argues that the ALJ violated SSR 96-7p, but she also fails to cite what inferences the

16

ALJ drew from a lack of treatment or medication. Nonetheless, the ALJ should keep this ruling's requirements in mind on remand.

Finally, Plaintiff argues that the ALJ erred in failing to consider a third-party statement of Plaintiff's cousin. An ALJ need not evaluate in writing every piece of testimony and evidence submitted, but must sufficiently articulate his assessment of the evidence to assure that he considered the important evidence. *Carlson v. Shalala*, 999 F.2d 180, 181 (7th Cir. 1993) (citations omitted). Where a third-party statement is essentially redundant to other testimony in the record, it is not a failure if the ALJ fails to discuss it. *See id.* The ALJ should keep this principles in mind as he considers Plaintiff's cousin's third-party statement on remand.

3. *Step Four*

Plaintiff argues that due to the ALJ's errors at previous steps the hypotheticals presented to the vocational expert did not accurately portray her capabilities. Given Plaintiff's error argument at step four is completely reliant upon the ALJ's handling of previous steps, the undersigned has no further comments to be considered on remand.

## Conclusion

For all these reasons, the Magistrate Judge recommends that the Court grant Plaintiff's brief in support of appeal (Docket No. 13) and that this case be remanded pursuant to sentence four of 42 U.S.C. § 405(g) for further consideration, consistent with this opinion.

Any objections to the Magistrate Judge's Report and Recommendation shall be filed with the Clerk in accordance with 28 U.S.C. § 636(b)(1). Failure to file timely objections within

fourteen days after service shall constitute waiver of subsequent review absent a showing of good cause for such failure.

      **SO RECOMMENDED** the 17th day of June, 2020.

_____
Matthew P. Brookman
United States Magistrate Judge
Southern District of Indiana

Served electronically on all ECF-registered counsel of record.